Laura G. Kennedy (7238) lkennedy@parrbrown.com
Michael S. Wilde (14366) mwilde@parrbrown.com
PARR BROWN GEE & LOVELESS P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Tel. 801.532.7840
Fax 801.532.7750

*Attorneys for Plaintiffs Custom Contracting Corp.
and Derek Hafen*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| CUSTOM CONTRACTING CORP., a Utah Corporation, and DEREK HAFEN, an individual,<br><br>    Plaintiffs,<br>  vs.<br><br>OWNERS INSURANCE COMPANY, a Michigan Corporation,<br><br>    Defendant. | **AMENDED COMPLAINT**<br><br>Case No. 4:24-cv-00043-PK<br><br>Magistrate Judge Paul Kohler |

Plaintiffs Custom Contracting Corp. ("**CCC**"), and Derek Hafen ("**Hafen**") (CCC and Hafen collectively are referred to herein as the "**Insureds**"), by and through their counsel of record, hereby complain against Defendant Owners Insurance Company ("**OIC**") (OIC and the Insureds collectively are referred to herein as the "**Parties**") and allege as follows:

1.      This is an insurance coverage action seeking declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. The Insureds seek a determination of the

Parties' rights and obligations under a commercial general liability policy of insurance issued by OIC to named insured CCC (the "**Policy**").

<u>**The Parties, Jurisdiction, and Venue**</u>

2.      Plaintiff CCC is a Utah corporation with its principal place of business located in Washington County, Utah.

3.      Plaintiff Derek Hafen is a citizen of Utah and resides in Washington County, Utah.

4.      Upon information and belief, Defendant OIC is a Michigan Corporation with its principal place of business located in Michigan.

5.      Upon information and belief, OIC is registered with the Utah Insurance Department and conducts business within the State of Utah.

6.      This coverage action arises out of three underlying lawsuits (collectively, the "**Underlying Lawsuits**"). The first lawsuit is an action titled *Gale Frandsen et al. v. Custom Contracting Corp. et al*, filed in the Fifth Judicial District Court, Washington County, State of Utah, case no. 230500656 (the "**Frandsen Lawsuit**"), which is pending before Judge Eric Ludlow. The second lawsuit is an action titled *Matthew L. Allen et al. v. Custom Contracting Corp. et al*, filed in the Fifth Judicial District Court, Washington County, State of Utah, case no. 230500778 (the "**Allen Lawsuit**"), which is pending before Judge G. Michael Westfall.  The third lawsuit is an action titled Nicole Briggs et al. v. Custom Contracting Corp., et al., filed in Fifth Judicial District Court, Washington County, State of Utah, case no. 240500441 (the "**Briggs Lawsuit**").

7.     Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, this action seeks a determination of the Parties' rights and obligations under the Policy with respect to OIC's defense and indemnification of the Insureds in connection with the Underlying Lawsuits.

8.     OIC has denied the Insureds' request for insurance coverage in connection with the Underlying Lawsuits and the Insureds dispute OIC's denial of coverage. Thus, an actual controversy exists between the Insureds and OIC and the Court has the authority to declare the rights and legal relations of the Parties as requested herein by the Insureds pursuant to 28 U.S.C. § 2201.

9.     The Parties are citizens of different states and complete diversity exists between them, and the amount in controversy—measured by the insurance coverage in dispute and the amounts being sought in the Underlying Lawsuits—exceeds $75,000, exclusive of interest and costs. Hence, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

10.     The District of Utah is the proper venue under 28 U.S.C. § 1391 because the Policy was issued in the District of Utah, the Insureds are residents and citizens of Utah, the Underlying Lawsuits were brought in Utah, the acts in the Underlying Lawsuits are alleged to have occurred in Utah, and OIC's wrongful denial of insurance benefits occurred in Utah.

11.     The Southern Region is the proper judicial region within the District of Utah because the Policy was issued in Washington County, Utah; the Insureds are citizens and residents of Washington County, Utah; the Underlying Lawsuits were brought in Washington County, Utah; the acts in the Underlying Lawsuits are alleged to have occurred in Washington

County, Utah; and OIC's wrongful denial of insurance benefits occurred in Washington County, Utah.

## **General Factual Allegations**

### *The Policy*

12.     OIC issued the Policy, a commercial general liability policy of insurance, policy number 082343-57759236-21, effective September 6, 2021, to September 6, 2022, to the named insured CCC. A true and correct copy of the Policy is attached hereto as Exhibit 1.

13.     Both CCC and Hafen are insureds under the terms of the Policy.

14.     CCC has paid OIC the full amount of the premiums owed for the Policy, which amount OIC accepted.

15.     In exchange for the premiums it received, among other things, OIC has a duty to defend any claim against the Insureds for which coverage applies under the terms of the Policy.

16.     Among other things, the Policy provides coverage for amounts the insured(s) becomes legally obligated to pay because of bodily injury.

### *The Insurance Claim and Denial of Coverage*

17.     The Complaint in the Frandsen Lawsuit (the "**Frandsen Complaint**") was filed on or around August 8, 2023. A true and correct copy of the Frandsen Complaint is attached hereto as Exhibit 2.

18.     The Insureds timely tendered defense of the Frandsen Lawsuit to OIC.

19.     OIC initially undertook the duty to defend the Insureds in the Frandsen Lawsuit, including it chose and assigned defense counsel to defend the Insureds in the Frandsen Lawsuit.

20.     When OIC undertook the Insureds' defense in the Frandsen Lawsuit, it purportedly did so under a reservation of rights.

21.     On or about September 5, 2023, OIC sent the Insureds a letter denying their request for insurance coverage in the Frandsen Lawsuit.

22.     In the September 5, 2023 letter, OIC stated that it would no longer pay for CCC's defense counsel (counsel who OIC had chosen and appointed) and informed CCC that it would need to defend itself in the matter.

23.     The four bases upon which OIC denied coverage in connection with the Frandsen Lawsuit are: (1) the Policy's "Own Property" Exclusion; (2) the Policy's "Ongoing Operations" Exclusion; (3) the Policy's "Your Product" Exclusion; and (4) the Policy's "Your Work" Exclusion.

24.     The Complaint in the Allen Lawsuit (the "**Allen Complaint**") was filed on or about August 21, 2023. A true and correct copy of the Allen Complaint is attached hereto as Exhibit 3.

25.     The Insureds timely tendered defense of the Allen Lawsuit to OIC.

26.     OIC initially undertook the duty to defend the Insureds in the Allen Lawsuit, including it chose and assigned defense counsel to defend the Insureds in the Allen Lawsuit.

27.     When OIC undertook the Insureds' defense in the Allen Lawsuit, it purportedly did so under a reservation of rights.

28.     On or about November 20, 2023, OIC sent the Insureds a letter denying their request for insurance coverage in the Allen Lawsuit and informing the Insureds that, among

other things, OIC no longer would pay for their defense counsel (who OIC had chosen and appointed) and that the Insureds would need to defend themselves in the Allen Lawsuit.

29.     The four bases upon which OIC denied coverage in connection with the Allen Lawsuit are: (1) the Policy's "Own Property" Exclusion; (2) the Policy's "Ongoing Operations" Exclusion; (3) the Policy's "Your Product" Exclusion; and (4) the Policy's "Your Work" Exclusion.

30.     The Complaint in the Briggs Lawsuit (the "**Briggs Complaint**") was filed on or around May 23, 2024. A true and correct copy of the Briggs Complaint is attached hereto as Exhibit 4.

31.     The Insureds timely tendered defense of the Briggs Lawsuit to OIC.

32.     On or about June 28, 2024, OIC sent the Insureds a letter denying their request for insurance coverage in the Briggs Lawsuit.

33.     In the September 5, 2023 letter, OIC stated that it would no longer pay for CCC's defense counsel (counsel who OIC had chosen and appointed) and informed CCC that it would need to defend itself in the matter.

34.     The four bases upon which OIC denied coverage in connection with the Briggs Lawsuit are: (1) the Expected or Intended Injury Exclusion; (2) the Policy's "Own Property" Exclusion; (3) the Policy's "Ongoing Operations" Exclusion; (4) the Policy's "Your Product" Exclusion; and (5) the Policy's "Your Work" Exclusion.

35.     On or about January 22, 2024, through their legal counsel, the Insureds sent a letter to OIC disputing its denial of coverage in the Frandsen and Allen Lawsuits (the Briggs Lawsuit had yet to be filed).

36.     In the January 22, 2024 letter, the Insureds responded to each Policy exclusion OIC had raised in its denial letters, including by identifying allegations contained in the Frandsen and Allen Complaints showing OIC owed a duty to defend the Insureds in thoselawsuits.

37.     OIC did not respond to the letter before the filing of the original Complaint in this matter.

38.     Since withdrawing its defense as stated above, OIC has not defended its Insureds or otherwise provided any insurance coverage of the Insureds in connection with the Underlying Lawsuits.

39.     The Insureds have incurred and continue to incur significant fees and other expenses in connection with the Underlying Lawsuits.

40.     The Insureds are entitled to have OIC pay for all attorneys' fees and other expenses they have incurred and will continue to incur defending against the claims and allegations made in the Underlying Lawsuits (collectively, together with all attorneys' fees and costs incurred in the future, the "**Fees**").

41.     The Insureds are entitled to be paid the difference of the amount of the Fees they have already incurred, as well as any amounts they will incur in the future, to defend against the claims and allegations asserted against them in the Lawsuit, less the amount of any retention or deductible they are required to pay pursuant to the terms of the Policy, as well as post-judgment interest at the highest rate allowed by law (collectively, the "**Amount Owed**"). Because the Insureds continue to incur the Fees in connection with the Lawsuit, the amount of the Amount Owed continues to increase and is impossible to determine at this point.

42.     The Insureds have and continue to incur Fees because OIC refuses to defend them in the Lawsuit.

43.     OIC has not paid any amount of the Fees and refuses to do so.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

44.     The Insureds incorporate the foregoing allegations herein by this reference.

45.     OIC offered the Policy to CCC.

46.     CCC accepted the Policy.

47.     The Policy constitutes an enforceable contract between the Insureds and OIC.

48.     The Insureds have fully performed their obligations under the Policy, or they were excused from performing their contractual obligations, including CCC has paid OIC, and OIC has accepted from CCC, the full amount of the premiums owed for the Policy.

49.     Pursuant to the terms of the Policy, OIC is required under the terms of the Policy and/or the law to defend the Insureds in the Underlying Lawsuits.

50.     The Insureds tendered the defense of the Underlying Lawsuits to OIC.

51.     OIC has refused and/or failed to defend its Insureds in the Underlying Lawsuits, and has communicated to the Insureds that it will continue to refuse to defend them in the Underlying Lawsuits, thereby breaching the Policy.

52.     The Insureds have been damaged by OIC's breach in an amount to be determined at trial.

53.     For instance, as a result of OIC's refusal and failure to defend its Insureds in the Underlying Lawsuits, the Insureds have incurred, and will continue to incur, the Fees.

54.     OIC's breach of the Policy is the proximate cause of the damages the Insureds have suffered and will suffer in the future.

55.     The Insureds are entitled to have OIC pay all damages to which they are entitled under the law, which include, but are not limited to, the Amount Owed; any judgment entered against the Insureds in the Underlying Lawsuits, including any amount awarded against the Insureds in excess of the Policy's limits and/or any consequential and/or punitive damages awarded against the Insureds, even if the judgment otherwise would not have been covered by the Policy; and consequential damages suffered by either Insured, such as those for injury to reputation, injury to credit rating, and damages for emotional distress.

## SECOND CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing/Bad Faith)

56.     The Insureds incorporate the foregoing allegations herein by this reference.

57.     By issuing the Policy and accepting premiums from the Insureds, OIC agreed to act in good faith and deal fairly with the Insureds such that OIC will not take action or fail to take action so as to intentionally destroy or injure either of the Insureds' rights to the benefits of the Policy, including as it relates to claimants seeking damages against the Insureds arising from incidents covered or potentially covered by the Policy.

58.     Without a reasonable basis for doing so, OIC failed and refused to act in good faith and deal fairly with the Insureds by, among other things:

    a.   Failing to diligently investigate the facts to determine coverage for the Underlying Lawsuits;

    b.   Failing to fairly evaluate coverage for the Underlying Lawsuits;

c.   Refusing to defend the Insureds in the Underlying Lawsuits;

d.   Withdrawing its defense of the Insureds in the Underlying Lawsuits;

e.   Taking unreasonable and unsupportable coverage positions inconsistent with the terms of the Policy and/or Utah law;

f.   Harassing the Insureds by seeking information irrelevant to the coverage analysis to manufacture a pretextual record for denying a duty to defend;

g.   Refusing and/or failing to timely respond to communications from the Insureds; and

h.   Refusing and/or failing to respond (at all) to communications from the Insureds.

The foregoing actions and omissions, along with all other bad faith actions and omissions identified in the future, are referred to hereafter as OIC's "**bad faith actions**".

59.    Because there can be no doubt that the policy exclusions invoked by OIC do not excuse OIC from its duty to defend the Insureds in each of the Underlying Lawsuits, OIC's duty to defend its Insureds in each of the Underlying Lawsuits is not and never has been fairly debatable.

60.    In the alternative, because the language of the Policy is ambiguous (and, therefore, under well-established Utah law, must be construed in favor of insurance coverage), OIC's duty to defend its Insureds was not fairly debatable.

61.    OIC's intentional refusal and failure to timely defend its Insureds in the Underlying Lawsuits is unreasonable and in violation of Utah law.

62.     OIC's refusal and failure to defend its Insureds were not the result of a good faith mistake.

63.     OIC's conduct violates, nullifies, and significantly impairs the benefit provided by the Policy.

64.     OIC, in refusing to defend its Insureds in connection with the Underlying Lawsuits, and by its other bad faith actions, failed to act towards them with honesty, fairly, or in good faith.

65.     OIC's bad faith has damaged the Insureds, including by causing, without limitation, general and consequential damages.

66.     For instance, OIC sells its insurance policies to provide peace of mind and financial security to its Insureds and OIC knew or should have known that failure to provide coverage as agreed would reasonably and foreseeably result in emotional and financial trauma.

67.     Also, for example, the Insureds are entitled to have OIC defend them during the course of the Underlying Lawsuits. The Insureds' ability to obtain the benefit of having their Fees paid now, before there is a final adjudication in the Underlying Lawsuits, provides them with benefits that cannot be adequately addressed after the Underlying Lawsuits conclude and/or by contract damages. For example, receiving a defense now provides the Insureds with greater resources to vigorously defend themselves in the Underlying Lawsuits before there has been a final adjudication, and the Insureds' ability to defend themselves may affect the outcome of each of the Underlying Lawsuits.

68.     OIC has committed insurance bad faith.

69.     The Insureds are entitled to be timely defended in the Underlying Lawsuits and paid the Amount Owed and all other damages to which they are entitled under the law.

70.     As a direct and proximate result of OIC's bad faith, its Insureds have suffered damages in an amount to be proven at trial, which amount includes the Fees and all other damages flowing from the adverse effects of OIC's refusal to defend its Insureds, including but not limited to the attorneys' fees and other expenses incurred by the Insureds in this action, and lost profits.

### THIRD CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

71.     The Insureds incorporate the foregoing allegations as though set forth herein.

72.     Under the Policy, OIC contracted to defend the Insureds against third-party liability claims, which establishes a fiduciary or quasi-fiduciary relationship under Utah law.

73.     OIC thereby assumed fiduciary obligations to protect the Insureds and agreed to abide by its fiduciary duties to the Insureds, including, but not limited to, protecting the interests of the Insureds as zealously as OIC protects its own interests.

74.     OIC breached its fiduciary duties by, among other things, after it had undertaken the duty to defend the Insureds in each of the Underlying Lawsuits, and while it was doing so, denying the Insureds' request for a defense purportedly based on Policy exclusions for which there can be no debate that they do not apply to excuse OIC from its duty to defend the Insureds, thereby, among other things, placing its own interests above its Insureds' interests.

75.     Without a reasonable basis for doing so, OIC breached these duties by, among other things:

a.  Failing to diligently investigate the facts to determine coverage for the Underlying Lawsuits;

b.  Failing to fairly evaluate coverage for the Underlying Lawsuits;

c.  Refusing to defend the Insureds in the Underlying Lawsuits;

d.  Withdrawing its defense of the Insureds in the Underlying Lawsuits;

e.  Taking unreasonable and unsupportable coverage positions inconsistent with Utah law;

f.  Harassing the Insureds by seeking information irrelevant to the coverage analysis for the purpose of manufacturing a pretextual record for denying a duty to defend;

g.  Refusing to timely respond to communications from the Insureds; and

h.  Refusing to respond (at all) to communications from the Insureds.

76.  As a result of OIC's breach(es) of these duties, the Insureds have suffered damages.

77.  OIC manifested a knowing and reckless indifference toward the rights of others, including its Insureds, and an award of punitive damages will discourage OIC and other insurers from engaging in similar conduct in the future.

78.  The Insureds have suffered and will continue to suffer damages in an amount to be established at trial resulting from OIC's breach of its fiduciary duties, including without limitation (a) attorneys' fees, costs, and all other expenses related to the Underlying Lawsuits and this lawsuit; (b) damages resulting from the public disclosure of this dispute between insurer and insured in filings accessible by third parties, such as various third parties currently or potentially adverse to the

Insureds; (d) the pre-judgment interest resulting from OIC's delays, attempts to avoid coverage, and attempts to avoid fulfilling any other of its obligations to the Insureds under the terms of the Policy and the law; and (e) all other damages flowing from the adverse effects of AOI's breaches of its fiduciary duties.

79.     OIC pursued said course of conduct intentionally, maliciously, oppressively, in conscious disregard of the rights of the Insureds, fraudulently, in constructive fraud and/or with reckless disregard of the likelihood of causing the Insureds emotional and mental trauma, and/or at all times to further its own economic interests at the risk of its Insureds' interests, including their mental health and well-being.

80.     OIC failed to act reasonably in its duties as a fiduciary, and its breaches of its fiduciary duties actually and proximately caused damages to the Insureds.

81.     As a result of OIC's conduct, the Insureds are entitled to all damages allowed by law, including an award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

82.     The Insureds incorporate the foregoing allegations herein by this reference.

83.     A dispute has arisen between the Parties concerning whether OIC is required to defend its Insureds in connection with the Underlying Lawsuits.

84.     Each of the Parties has a legally protected interest in the controversy.

85.     The Parties' interests are adverse.

86.     The issues presented to the Court herein are ripe for justiciable determination. OIC has refused to defend its Insureds in the Underlying Lawsuits, has refused to pay any or all

of the Fees the Insureds have incurred and continue to incur in the Lawsuit, and has communicated that it will continue to refuse to defend its Insureds in connection with the Underlying Lawsuits and/or refuse to pay any amount of the fees incurred in connection with the Underlying Lawsuits.

87.     A justiciable controversy exists concerning the Insureds' rights under the Policy, which grants this Court the power to determine their rights.

88.     The Insureds are entitled to have the Court enter judgment declaring that OIC must defend its Insureds in the Underlying Lawsuits and must pay the total amount of their Fees incurred in defending against the claims and allegations brought in the Underlying Lawsuits.

WHEREFORE, the Insureds pray for judgment as follows:

1.     For all of the contractual benefits owing under the Policy;

2.     For economic, noneconomic, and consequential damages as proven at the time of trial;

3.     For exemplary and punitive damages as established at the time of trial;

4.     For reasonable attorneys' fees, costs, and expenses incurred in connection with and/or arising out of the Underlying Lawsuits and this insurance coverage dispute; and

5.     For such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

The Insureds hereby demand trial by jury in this action.

DATED THIS 27th day of September 2024.

PARR BROWN GEE & LOVELESS P.C.

/s/ Michael S. Wilde
Michael S. Wilde
Laura G. Kennedy
*Attorneys for Plaintiffs Custom Contracting Corp. and Derek Hafen*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of September, 2024 I caused a true and

correct copy of the foregoing **AMENDED COMPLAINT** to be sent via electronic mail to:

Connor L. Cantrell, Esq. (#15319)
The Hustead Law Firm, A Professional Corporation
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
Ph. 303-721-5000
Fax 303-721-5001
Email: clc@thlf.com
*Attorneys for Owners Insurance Company*

/s/ Michael S. Wilde